(No. 3122—

GEORGE W. KING, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed August 18, 1939.*

BENJ. F. CASSIDAY, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

This claim comes before the Court on claimant's amended complaint, a stipulation covering certain of the facts involved, the testimony of the claimant and the testimony of Dr. J. J. Donovan, and two questions are presented.

1. From the nature of claimant's employment, are both parties under the Compensation Act?

2. If the claimant is under the Act, what compensation should be paid to him?

The evidence shows that on the 22nd day of April, 1937, claimant was washing windows in the southwest corner of the State Capitol Building on the first floor; that he attempted to raise a window, and for this purpose he got on a radiator;

that there was a metal piece on top of the radiator and the radiator and metal piece became unbalanced and threw him to the floor. Claimant's superior officer was immediately notified and he was taken in an ambulance to St. John's Hospital, Springfield, Illinois. The evidence further shows that in his performance of his duties as janitor, he used the elevators in going up and down; that he used acids and compounds in the water for washing windows; he was also required to use ladders. The evidence further shows that the windows on the first floor of the State House are 12 to 15 feet high. The evidence further shows that claimant's duties also included moving heavy objects, moving furniture, emptying waste paper, polishing furniture, cleaning cuspidors, mopping on his hands and knees, and generally whatever he was told to do along that line.

The evidence further shows that when claimant fell he received a Y fracture of the left tibia into the knee joint—a comminuted fracture; that he suffered great pain; that X-rays were taken at the hospital; that the fracture extended into the knee joint; that he received treatment at the hospital which included extension and immobilization of the left leg and knee for eight weeks at St. John's Hospital; that the leg was in a cast, and that during the healing period it was stretched in order that the left leg would not become shorter; that said treatment continued for eight weeks, and then the passive motion was begun; that the claimant was at the hospital from April 22, 1937 to June 30, 1937, a period of 69 days, being in bed, in a wheel chair and on crutches during this time; that due to weakness of the knee and pain in the knee, claimant was unable to participate in any gainful occupation; that he received medical treatment for about thirty days after he left the hospital.

At the time the testimony was taken which was on the 17th day of January, 1938, Dr. Donovan said that although there was no limitation of motion, there was some stiffness, and some pain, but not enough to prevent the patient from returning to work and continuing his usual occupation; that a traumatic condition prevailed; that this condition is known as traumatic arthritis. Dr. Donovan testified at the time that the arthritis was still present but that it would gradually wear away; that the fracture itself had cleanly and thoroughly healed, without a limitation of motion, and that claimant had all of the original necessary flexing motion in his left knee.

It was the opinion of the doctor that there was some partial disability which may be permanent, but the permanency would not exceed over 15%. In other words, it was the opinion of the doctor that he had received a possible 15% impairment of the use of his knee which may or may not continue depending upon the claimant's ability to recover at his age. Dr. Donovan expected the claimant to have a complete recovery, and to get more and more use of the left knee exclusive of any progressive rather than any regressive traumatic arthritis that might set up.

We are inclined to the view that the claimant, in the performance of his duties, was under the Compensation Act, and that under Section 8 (a) of the Compensation Act, he is entitled to an award in the sum of $379.18, which represents unpaid hospital and medical bills incurred by the claimant as the result of the injury.

The testimony of the Doctor is not very satisfactory as to the permanency of the injury. The total temporary incapacity was of five month's duration, but giving the doctor's testimony the most favorable consideration, this claimant has suffered a permanent loss of 15% of the use of his left leg.

Claimant's monthly wage at the time of the injury was $112.50, an annual earning of $1,350.00, or an average weekly wage of $25.96. He was injured April 22, 1937. The most claimant would be entitled to would be compensation for five months total incapacity based upon a 15% loss of the use of his left leg. Five months thereafter would end September 22, 1937, a period of twenty-two weeks. Compensation for temporary total incapacity for the twenty-two weeks' period of inability to work equals $285.56 (22 weeks time 50% of $25.96). Section 8 (b) Workmen's Compensation Act. Compensation for fifteen per cent loss of use of the left leg, under Section 8 (e-15) Workmen's Compensation Act, equals fifteen per cent of 190 weeks times fifty per cent of $25.96 or $369.93. Aside from the doctor and hospital bills the total compensation for temporary total incapacity and specific loss of fifteen per cent of the use of the left leg to which claimant would have been entitled amounts to $369.93, plus $285.56, or $655.49.

The record discloses that following his injury, claimant was paid his regular salary of $112.50 per month until July 1, 1937 and then $125.00 per month until October 1, 1937. All of his salary having been paid for unproductive time follow-

ing the injury it must be treated as a payment of compensation to the claimant. *United Air Lines* vs. *Industrial Commission*, 364 Ill. 346. These salary payments total $625.96 and deducting this amount from the compensation as above computed would leave a balance of $29.53 compensation due and unpaid.

We, therefore, make an award to George W. King in the sum of $29.53, and an award to George W. King for the use of St. John's Hospital, for hospital services and attention in the sum of $251.18, for the use of Kirlin & Egan, for ambulance service in the sum of $3.00 and for the use of Dr. John J. Donovan, for professional and medical services and treatment in the sum of $125.00.

This award being subject to the provisions of an Act entitled ''An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof,'' approved July 3, 1937 (Session Laws 1937 page 83), and being subject further to the terms of an Act entitled ''An Act making appropriations to the Auditor of Public Accounts for the disbursement of certain moneys until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly'' (Senate Bill 123 as amended) approved July 8, 1939;—and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given made payable from the appropriation from the General Revenue Fund in the manner provided for by the foregoing Acts.